FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION        2006 FEB 17 A 8:25

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

**JACKIE BROWN,**

    **Plaintiff,**

v.                                             Case No.: 3:06-cv-122-J-20MMH

**CITY OF JACKSONVILLE, FLORIDA,**
**and KEVIN HYDE, in his official capacity**
**as President of the Jacksonville City Council,**

    **Defendants.**

_____/

## ORDER

Before the Court is Plaintiff's Motion for Preliminary Injunction (Doc. No. 2, filed on February 8, 2006). The Court heard oral argument from both sides on the Motion at 2:00 P.M. on Thursday, February 16, 2006. Upon careful consideration and for the reasons provided below, the Plaintiff's Motion for a Preliminary Injunction (Doc. No. 2) is **GRANTED**.

### I. Factual Background

According to the Verified Complaint, the Plaintiff Jackie Brown attended meetings of the City Council when it met in regular session from August 12, 2003 to November 22, 2005. Doc. No. 1, filed February 8, 2006. She voiced her opinions over matters of public interest, regarding the manner in which construction contracts were being awarded by the City to minority businesses.[1] On

---

[1] City Council President noted in his affidavit that Plaintiff Brown "has appeared before the Council on numerous occasions prior to the meeting at issue on November 22, 2005. She has voiced her concerns on issues of interest to her generally, as well as groups she purports to represent." Hyde Aff. ¶ 9.

1

November 22, 2005, she submitted a public comment card so she would be permitted to make comments during the public comments period of the Council meeting. When her name was called, she approached the lectern and began delivering her speech to the members of the City Council, the media, and others present. City Council President, Mr. Kevin Hyde, concluded that she did not observe the Rules of the Council as to her remarks. He then instructed that her microphone be turned off and that she be escorted from the chambers. Hyde Aff. ¶ 12. Plaintiff then made a second request to make further public comments and was refused by the City Council President. Plaintiff proceeded toward the lectern despite Mr. Hyde's refusal to allow her to address the Council again. The Sergeant at Arms came toward to lectern to address the situation and to escort Plaintiff from the microphone. When the Sergeant at Arms approached Plaintiff and grasped her arm, she swung her arm and he fell to the floor. Plaintiff was then restrained by a number of officers and was removed from the Council chambers. Plaintiff was subsequently charged with resisting an officer without violence and disturbing a lawful assembly.

The events of November 22, 2005 are not before this Court in resolving this preliminary injunction, except to the extent that the Court will consider such events in determining whether the conduct authorizes the City Council President's unbridled discretion in imposing the "curative measure" he selected. The recorded meeting of November 22, 2005 was played for the Court at oral argument on February 16, 2006. After observing the recording, this Court cannot ignore that Plaintiff, an African American woman, appeared before the City Council in an outfit, fitted with a handkerchief on her head, doling out cotton balls, and calling herself "Aunt Jemima" -- after properly identifying herself. "Aunt Jemima" then proceeded to speak passionately on what she considered to be inappropriate conduct of City Council members, also singling out African American City

Council members, in assigning contracts to minority business owners. This was undoubtedly political speech deserving of broad First Amendment protection.

On January 9, 2006, Mr. Steven Rohan, Deputy General Counsel, issues a directive, on behalf of Council President Mr. Kevin Hyde and the City of Jacksonville, barring the Plaintiff from attending City Council meetings and City Council Committee meetings for seven City Council cycles, which conclude on March 31, 2006. See Exhibit A attached to Doc. No. 2. The directive was made enforceable by the Council's Sergeant at Arms, the City's Sheriff's Office, and City Hall security personnel. The Plaintiff was effectively prohibited from attending or speaking at City Council meetings and City Council Committee meetings for almost three months.[2] The Plaintiff contends that this is a violation of the First and Fourteenth Amendments to the Constitution of the United States and that the ban is an unconstitutional prior restraint of her political speech and expression. The Plaintiff seeks a preliminary injunction to prohibit the Defendant from enforcing the directive issued on January 9, 2006 that bars her from attending City Council meetings until March 31, 2006, pending the final disposition of this action.[3]

## II. Standard of Review

As the party seeking a preliminary injunction, the Plaintiff here has the burden to establish (a) a substantial likelihood of success on the merits of her claims that her First and Fourteenth Amendment rights were violated; (b) a substantial threat of irreparable injury if the injunction were

---

[2] The directive expressly stated that Ms. Brown was "not barred from entering City Hall and conducting official city business" (emphasis in original). The letter stated "[i]f she has official city business with the Council, she should alert the Council President of this in advance, so as to ensure her ability to so conduct this business."

[3] Subsequent to the January 9, 2006 letter, Plaintiff Brown has been banned from three meetings: January 10, January 24, and February 14, 2006. At this time, the three remaining City Council meetings to which the ban applies, and to which the preliminary injunction addresses, are February 28, March 14, and March 28, 2006.

3

not granted; (c) that the threatened injury to the Plaintiff outweighs the harm that an injunction may cause the Defendants; and (d) that granting the injunction would not disserve the public interest. Fed. R. Civ. P. 65; Int'l Cosmetics Exchange, Inc. v. Gapardis Health & Beauty, Inc., 303 F.3d 1242, 1246 (11th Cir. 2002).

### A. Substantial Likelihood of Success on the Merits

The First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." This First Amendment guarantee to free speech has been extended to government actors through the Fourteenth Amendment. Everson v. Board of Educ., 330 U.S. 1, 8 (1947). Nevertheless, First Amendment protection of freedom of expression is not inviolate; the U.S. Supreme Court has established that the "First Amendment does not guarantee persons the right to communicate their views at all times or in any manner that may be desired." Heffron v. International Soc'y. for Krishna Consciousness, 452 U.S. 640, 647 (1981); Jones v. Heyman, 888 F.2d 1328, 1331 (11th Cir. 1989).

In fact, in balancing a citizen's right to express her opinion on public property against the government's interest in limiting the use of its property, the Courts have established that a city may enforce a reasonable regulation of the "time, place, and manner" of expression whenever the excluded speech is "content-neutral" provided it is "narrowly tailored to serve a significant government interest" and it leaves open "ample alternative channels of communication." Jones, 888 F.2d at 1331 (finding a significant government interest in controlling the agenda and preventing the disruption of public meetings) (citing Airport Comm'rs. of Los Angeles v. Jews for Jesus, 482 U.S.

569, 573 (1987)); see also Ward v. Rock Against Racism, 491 U.S. 781 (1989).[4]

### 1. **Content-Neutral Restriction**

In determining whether the City's restriction is content-neutral, the Court's "controlling consideration" is the City's purpose in limiting the Plaintiff's speech in a public forum. Jones, 888 F.2d at 1331-32 (citing Ward, 491 U.S. at 791) As long as a restriction "serves purposes unrelated to the content of expression," it is content-neutral "even if it has an incidental effect upon some speakers or messages but not others." Zapach v. Dismuke, 134 F.Supp.2d 682, 690 (E.D. Pa. 2001) (citing Ward, 491 U.S. at 791). A content-neutral ordinance or restriction is one that does not restrict "either a particular viewpoint or any subject matter than may be discussed." Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1259 (11th Cir. 2005) (citations omitted).

Applying such standards to this case, the Court finds that both the City's Council Rule and the City's directive are content-neutral. Council Rule 4.505 (Disruption of Meeting) permits barring any person not a Council member who makes "personal, impertinent or slanderous remarks or who shall become boisterous." Mr. Hyde's action of throwing Plaintiff out of the meeting on November 22, 2005 apparently resulted from the Plaintiff's disruptive conduct and her failure to adhere to the agenda item under discussion, rather than a disapproval of her message or viewpoint.[5] The Council Rule 4.505 authorizing Mr. Hyde's expulsion of the Plaintiff from the November meeting due to her behavior was not unconstitutional on its face. Rowe v. City of Cocoa, 358 F.3d 800, 803 (11th Cir. 2004) (finding similar city council rule designed to regulate orderly and efficient public meetings

---

[4] If the regulation or restriction had been content-based, a stricter standard would be applied, and the government's interest would need to be "compelling."

[5] The also notes that the her apparent striking of a law enforcement officer took place after Mr. Hyde ordered her removal from the council chambers.

that are limited to specific subject matter germane to an agenda at hand to allow others an opportunity to speak, is constitutional on its face). But the City went beyond expelling her from the single meeting at which she was disruptive.

Indeed, the City decided that the Plaintiff had violated the Council Rule against disruption of meeting at the November meeting, and issued its directive on January 9, 2006 that bans her from attending seven cycles of City Council meetings and City Council Committee meetings. Both the Rule and the directive appear to be a ban on the person or behavior rather than a ban based on the content of expression. In fact, the directive bans Plaintiff without any reference whatsoever to the content of her speech. The Court finds that the limitations on her freedom of speech was, therefore, content-neutral.

Having determined that the Council Rule and directive are content-neutral, the Court applies the case law allowing a city to enforce them as long as they reasonably regulate the time, place and manner of the Plaintiff's expression. Jones, 888 F.2d 1328. Time, place and manner regulations on content-neutral matters are valid only if they are "narrowly tailored" to serve a "significant governmental interest" and allow "ample alternative channels of communication." Id. at 1332-33. The Supreme Court has recognized the significance of the government's interest in conducting orderly, efficient meetings of public bodies. Id. (citing In City of Madison, Joint School Dist. v. Wisconsin Employment Relations Comm'n, 429 U.S. 167 (1976)). Accordingly, this Court finds that at the City Council meeting on November 22, 2005, Mr. Hyde had a significant governmental interest in managing an efficient Council meeting agenda, in conserving time, in ensuring that others had an opportunity to speak, and in preventing the Plaintiff's disruption, and thus in having her removed from the meeting as a reasonable attempt to regulate the time, place and manner of the

Plaintiff's speech. A presiding officer at a meeting has the authority to maintain order and keep debate to the topic at hand: "To hold otherwise -- to deny the presiding officer the authority to regulate irrelevant debate and disruptive behavior at a public meeting -- would cause such meetings to drag on interminably, and deny others the opportunity to voice their opinions." Id. at 1333. Such reasons for her removal from the November 22, 2005 meeting properly served a sufficiently significant governmental interest that justified banning her from that particular meeting. Id.

Nevertheless, the Court finds that there is a substantial likelihood that Plaintiff will succeed in her claim that the City's directive banning her from seven future cycles of Council meetings is unconstitutional as applied to Plaintiff Brown. Banning Plaintiff from future meetings is not a restriction that is "narrowly tailored" to achieve the significant governmental interest of running the meetings efficiently, while successfully preventing her disruptive behavior. Although the City does not have to use the "most appropriate method" of restricting the Plaintiff, it should nonetheless use a directive that is more "narrowly tailored" than a sweeping ban from future meetings for months. Jones, 888 F.2d at 1333. This Court is not second-guessing the City Council President's decision to eject Plaintiff from the November 22, 2005 meeting. Ward v. Rock against Racism, 491 U.S. 781, 800 (1989) ("The validity of [time, place, or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests or the degree to which those interests should be promoted.") (internal quotation omitted). Because of the lack of control and threat to decorum at the November 22, 2005 meeting, the Court finds nothing wrong with Mr. Hyde's order of her ejectment. In addition, Plaintiff agrees that the ejectment order is not currently before this Court.

Moreover, banning her from future Council meetings does not leave her with an "ample

alternative channel of communication." Id., at 1331-32. Although the City's directive expressly allows the Plaintiff to "direct [her] communications to the City Council through e-mails or letters, or have her messages to the Council delivered by other persons," such alternative channels do not amount to "ample" alternatives that would be comparable to the same degree as her own passionate deliverance of her messages in person at the meetings, to the entire council or an entire council committee meeting, at the same time. Because the two requirements (of narrow tailoring and of an ample alternative channel of communication) are lacking, the City's content-neutral restriction, and the Council Rule as applied, are substantially likely to be found as a violation of her First Amendment rights.

### 2. **Prior Restraint**

Furthermore, the Court finds that there is a substantial likelihood of success on the merits of Plaintiff's claim that this ban from her attendance of meetings for seven cycles is an unlawful "prior restraint" and an unconstitutional censorship on free speech and assembly. A prior restraint of expression "exists when the government can deny access to a forum before the expression occurs." Bourgeois v. Peters, 387 F.3d 1303, 1319 (11th Cir. 2004). Such a "prior restraint of expression comes before [the] court with 'a heavy presumption against its constitutional validity.'" Universal Amusement Co. v. Vance, 587 F.2d 159, 165 (5th Cir. 1978) (citing Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70 (1963); New York Times Co. v. United States, 403 U.S. 713, 714 (1971)). Moreover, the government cannot prohibit future expressive activity as a result of past unlawful conduct. Polaris Amphitheater Concerts, Inc. v. City of Westerville, 267 F.3d 503, 507 (6th Cir. 2001) ("where a law sets out primarily to arrest the future speech of a defendant as a result of his past conduct, it operates like a censor, and as such violates First Amendment protections against prior

restraint of speech"). Mr. Hyde's expulsion of the Plaintiff from the November meeting based on Council Rule 4.505 is not a question before this Court. The question before the Court is whether the directive banning her from seven cycles of future Council meetings based on her past conduct is an unconstitutional restriction. This Court finds that the directive, as crafted, is an unconstitutional restriction and, therefore, the Council Rule 4.505, as applied, violates Plaintiff's First Amendment protection against prior restraint of free speech.

Courts have also established certain "procedural safeguards" to ensure a protection against undue delay that would result in unconstitutional suppression of protected speech. These safeguards that are necessary to ensure expeditious decision-making regarding the censorship are as follows:

> (1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained;
>
> (2) expeditious judicial review of that decision must be available; and
>
> (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.

FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 227-28 (1990). None of these safeguards were provided to the Plaintiff here. She was banned effective immediately on January 9, 2006 until March 31, 2006. This amounts to one more reason for this Court to find that there is a substantial likelihood of success on the merits of her constitutional violation claim and, to find, therefore, that the first element for a preliminary injunction is established.

### B. Irreparable Injury

The Court further finds that the City's banning the Plaintiff from attending or speaking at the public meetings for seven cycles amounts to irreparable injury. During those

months, she is precluded from timely voicing her opinions in person on matters that are before the City Council or a council committee. Elrod v. Burns, 427 U.S. 347 (1976); see also, FW/PBS, Inc., 493 U.S. at 215. By being banned from Council meetings or Council committee meetings for months, she misses the opportunity to be heard regarding current issues that affect her as a citizen of the City. Once the opportunity passes, the issue most likely becomes moot and the opportunity to be heard on it cannot be retrieved. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod, 427 U.S. at 373-74 (citing New York Times Co. v. United States, 403 U.S. 713 (1971). Additionally, "[t]he timeliness of political speech is particularly important." Elrod, at 374, n.29 (citing Carroll v. Princess Anne, 393 U.S. 175, 182 (1968); Wood v. Georgia, 370 U.S. 375, 391-392 (1962)).

Not only is Plaintiff banned from use of the lectern for seven cycles of City Council meetings, but her presence at the meetings as well as council committee meeting is also banned. Based on the facts of the case before the Court, written correspondence to City Council members and proxy speakers are inadequate substitutes for public attendance and public speaking.[6] City Council meetings and council committee meetings offer the opportunity to persuade both the Council members, and also other meeting attendees. When

---

[6]Defendants' argue that there is no prior restraint of Plaintiff Brown's speech:
Under the City Council's limited restrictions, Brown is not prevented from engaging in essentially the full swath of communicative freedoms she had and continues to have. She can access and meet with any person or official in City Hall including City Councilpersons on any topic of her choosing. She can submit written materials or e-mails to any city employee or official on any subject. She can communicate with the City Council at its meetings through any person of her choice on topics germane at that meeting. She can even request to appear at a City Council meeting if a matter arises that requires her presence.
Doc. No. 8 at 13-14.

publicly televised, as full council meetings are, such meetings offer a larger platform for communication to fellow citizenry than would mere email correspondence to Council members. A particularly impassioned speaker has the opportunity to influence not only Council members, but also other individuals. Such a ban limit Plaintiff's ability to publicly communicate with Council members and other observers of the meeting, and it also prevents Plaintiff from being an observer at such meetings. Plaintiff is barred from seeing and being seen at City Council meetings and City Council Committee meetings for seven City Council cycles. The Court finds that this is an irreparable injury and not narrowly tailored.

### C. Balance of Harms

The third element for a preliminary injunction is that the threatened injury to the Plaintiff outweighs the harm that an injunction may cause the Defendants. The Court finds that the City's directive in restraining the Plaintiff from attending Council meetings for several months amounts to unconstitutional censorship that far outweighs any harm to the City incurred by an injunction especially because there are less restrictive means of preventing her disruption of meetings without banning her, such as having her escorted out if and when she becomes disruptive at a future meeting.

The City Council meeting, to which the public has been invited to deliver public comment, is a limited public fora. Forum analysis has been developed as a means of weighing the balance when the Government's interest in regulating speech activity on its property outweighs the interest of those wishing to use the property for expressive activity.

See United States v. Kokinda, 497 U.S. 720, 726 (1990); Cornelius v. NAACP Legal Defense & Educational Fund, Inc., 473 U.S. 788, 800 (1985). In traditional public fora and limited public fora, "regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication" are permissible. Board of Airport Comm'rs v. Jews for Jesus, Inc., 482 U.S. 569, 573 (1987) (quoting Perry Educ. Ass'n. v. Perry Local Educators' Assn., 460 U.S. 37, 45, 103 S. Ct. 948, 955, 74 L. Ed. 2d 794 (1983)). Whereas, "to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. . . ." Id.; Jones v. Heyman, 888 F.2d 1328, 1331 (11th Cir. 1989).

This Court has found no case authorizing a time, place and manner restriction that limits such a length of time for a single disruptive incident.[7] The City acknowledges that Ms. Brown attended numerous prior City Council meetings without adverse incident. See Hyde Aff. ¶ 9. Accordingly, the "cooling off" period that Mr. Hyde crafted was in response to the events of the meeting on November 22, 2005. Id. ¶ 16-19. There is no way to measure the reasonable or rational explanation for why seven cycles of the City Council meetings is a commensurate or appropriate "curative measure," much less that it is an effective "curative measure." The Court has deep concerns as to whether Mr. Hyde has authority to craft curative measures beyond ejectment from the meeting at which inappropriate remarks or behavior are exhibited. Does the word "barred" in the rule allow

---

[7]Neither party challenges the City Council's authority to remove attendees for disruptive behavior. Defendants' response in opposition states "Plaintiff makes no challenge to the City Council rules that authorize the removal of persons who engage in disruptive behavior, nor could she." See Doc. No. 8 at 5, n.3 (citations omitted).

the Council President to issue a lifetime ban on Plaintiff Brown's attendance at meetings because of the November 22, 2005 incident? That's what unbridled discretion refers to. The word "barred" as interpreted by the Defendants cannot be measured against any criteria, particularly the length of the ban.

In defense of the ban placed on Plaintiff Brown, the City raises a red herring by juxtaposing the gravity of the seven-cycle-ban with the potential criminal penalty of one year in jail. Defendants note that "[u]nder the criminal charges, [Plaintiff] is subject to up to one year in jail, a highly restrictive forum that would preclude her appearance at Council meetings far beyond the seven cycles at issue." Id. However, Defendants miss the point entirely; potential criminal sanctions are irrelevant to whether the restraint on Plaintiff's speech is Constitutional. Furthermore, such criminal sanctions, not meted out by Mr. Hyde, bear no correlation to the question at hand. See Doc. No. 8 at 11, n.9. A seven-cycle-ban from attending or speaking at City Council meetings and City Council Committee meetings is not "narrowly tailored" to serve the significant governmental interests in "maintaining decorum, promoting safety, effectively conducting its business, and avoiding disruptions in its chambers." Doc. No. 8 at 4.

### D. Public Interest

Finally, the Court finds that granting the injunction would not disserve the public interest. To the contrary, to allow the City to have unbridled authority to ban anyone it wants to from months of future meetings due to some past behavior would be a disservice to the public and would have a chilling effect on the citizens' exercise of their right to freely

express themselves at these public meetings about critical issues that affect them. As eloquently stated in The New York Times Co. v. Sullivan, 376 U.S. 254, 269-70 (1964):

> The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled by our decisions. The constitutional safeguard, we have said, 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' . . . The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system . . . . (I)t is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions . . . and this opportunity is to be afforded for 'vigorous advocacy' no less than 'abstract discussion' . . . . The First Amendment, said Judge Learned Hand, 'presupposes that right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection. To many this is, and always will be, folly; but we have staked upon it our all.' . . . . Mr. Justice Brandeis, in his concurring opinion . . . . gave the principle its classic formulation:
>
> 'Those who won our independence believed * * * that public discussion is a political duty; and that this should be a fundamental principle of the American government. They recognized the risks to which all human institutions are subject. But they knew that order cannot be secured merely through fear of punishment for its infraction; that it is hazardous to discourage thought, *** hope and imagination; that fear breeds repression; that repression breeds hate; that hate menaces stable government; that the path of safety lies in the opportunity to discuss freely supposed grievances and proposed remedies; and that the fitting remedy for evil counsels is good ones. Believing in the power of reason as applied through public discussion, they eschewed silence coerced by law--the argument of force in its worst form. Recognizing the occasional tyrannies of governing majorities, they amended the Constitution so that free speech and assembly should be guaranteed.' Thus we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials . . . .

(citations omitted). This Court finds that the public interest is absolute and self-evident.

### III. Conclusion

Because this Court finds that the Plaintiff has demonstrated the four requirements for obtaining a preliminary injunction, her Motion for Preliminary Injunction (Doc. No. 2, filed on February 8) is **GRANTED**. The Defendants are hereby preliminarily enjoined from prohibiting the Defendants from enforcing the directive issued on January 9, 2006 that bars her from attending City Council meetings until March 31, 2006, pending the final disposition of this action. This preliminary injunction does not, however, preclude the presiding officer of the City council from having "[a]ny person, not a Council Member, making personal, impertinent or slanderous remarks or who shall become boisterous while the Council is in session" removed from a City Council meeting. Council Rule 4.505.

**DONE AND ENTERED** at Jacksonville, Florida, this 16th day of February, 2006. at 5: 45 PM

HARVEY E. SCHLESINGER
United States District Judge

**Copies to:**

Wm. J. Sheppard, Esq.
D. Gray Thomas, Esq.
Matthew R. Kachergus, Esq.
Blake G. Johnson, Esq.
Michael Wedner, Esq.
Scott D. Makar, Esq.
Leslei Street, Esq.